BAILEY O. COOPER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket No. 6240-88
United States Tax Court
T.C. Memo 1990-98; 1990 Tax Ct. Memo LEXIS 106; 58 T.C.M. (CCH) 1523; T.C.M. (RIA) 90098; February 28, 1990
*106 Held: Amounts of income received from drug smuggling in 1982 and 1983 determined. Fraud addition sustained. C. Wells Hall, III, for the petitioner. Frank C. McClanahan, III, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies and additions to tax against petitioner in the following amounts: Additions to Tax
Tax Year
Section
Section
Section
Ended
Deficiency
6653(b)(1) [1]
6653(b)(2)
6661
12-31-82
$ 1,591
$    796
50% of the
$    -0-
interest due
on $ 1,591
12-31-83
102,457
51,229
50% of the
25,614
interest due
on $ 102,457
*107 The issues before the Court are the amount of the deficiency in 1983 and the applicability of the fraud addition in each year. Petitioner concedes the deficiency for 1982. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner is an unmarried individual whose residence at the time of filing the petition was Charlotte, North Carolina. Petitioner timely filed individual income tax returns for the taxable years 1982 and 1983, which returns omitted any income from the conspiracy to import and sell marijuana in which petitioner was a participant during these 2 years. The marijuana conspiracy was headed by petitioner's first cousin, Robert Stowe, and took place during 1982 and 1983 largely in the coastal counties of Brunswick and Onslow, North Carolina. At the time petitioner was recruited by Mr. Stowe into the conspiracy, he was approximately 23 years old and living in the Wilmington-Wrightsville beach area. Petitioner in 1982 assisted as an off-loader, moving marijuana from a boat to a truck and then to another location for storage prior to sale. Petitioner admits that he was paid $ 5,000 in 1982 for these services and contests only *108 the fraud addition for that year. Early in 1983, Mr. Stowe instructed petitioner to buy pickup trucks, to rent a beach-front condominium to use as an unloading point, and to rent a trailer to use for storage. Mr. Stowe had previously used a site on Little River inlet in Brunswick County as an unloading point. Both Mr. Stowe and petitioner drove around together looking for usable inlets north of Wilmington and for a house and storage facilities. At Mr. Stowe's direction petitioner rented a condominium on Topsail Island in Onslow County on New River Inlet and equipped it with a radio. During 1983, Mr. Stowe provided petitioner with a total of $ 210,000 in two installments, $ 35,000 and $ 175,000. The $ 175,000 was recovered from a rental house in Brunswick County that had been used in the conspiracy. Mr. Stowe directed that these funds be used in part to purchase a house and to rent the Onslow County condominium, in part for expenses of the conspiracy, and the remainder to compensate petitioner. Petitioner has substantiated disbursements for expenses during January 1983, as directed by Mr. Stowe, as follows: Rental of condo, purchase of
boat and supplies
$   5,000 Trailer rental
1,250
Payment to Robert Stowe
5,000
Purchase of second boat
2,628
Miscellaneous expenses
in January 1983
5,000
Payments to attorneys
defending conspirators
80,000
Payment to John Chisold
20,000
$ 118,878
*109 In May 1983, at Mr. Stowe's direction petitioner purchased a house in Deep Run, Lenoir County, North Carolina. Petitioner furnished the down payment of $ 5,000 and made four mortgage payments of $ 237 or an additional $ 948. Thus of the $ 210,000, petitioner expended as directed by Mr. Stowe a total of $ 124,826, retaining for himself $ 85,174. During this period, petitioner's father prepared and signed for petitioner tax returns which were filed on petitioner's behalf. None of the money realized from the drug smuggling conspiracy was reported for tax purposes. Petitioner admits that he retained $ 33,220 of the $ 210,000 fund. We find, however, that petitioner retained and used for his own purposes $ 85,174. At some point during 1983, petitioner stayed in New Hampshire and grew marijuana which he sold on his return to North Carolina. He also received other funds during 1983 from Mr. Stowe. However, this additional income is not in issue. OPINION I. Deficiency
Petitioner admits to having received $ 5,000 during 1982 from his participation in the marijuana conspiracy which he did not report. Petitioner stipulated to retaining for his own purposes $ 20,000 of *110 the total of $ 210,000 received from Mr. Stowe during 1983. On brief petitioner admits that he was unable to account for $ 33,220 of the $ 210,000 received in 1983, and such sum is thus taxable to him. However, considerable doubt is cast upon petitioner's admissions by reason of his interrogation by Fred L. McKinney, in October 1985, when Mr. McKinney was a lead agent on the drug smuggling task force of the North Carolina State Bureau of Investigation. Mr. McKinney interrogated petitioner while petitioner was incarcerated. The interrogation took place in a grand jury room in the courthouse which included the jail in which petitioner was incarcerated. Petitioner does not, however, contend that he was intimidated by the place of the interrogation. There are substantial discrepancies between the statements which petitioner gave Mr. McKinney during that interview and petitioner's testimony during the trial as to the utilization of parts of the $ 210,000 at the direction of Mr. Stowe. Petitioner's trial testimony indicated that he retained no more than $ 33,220 of the $ 210,000 whereas he told Mr. McKinney that he kept $ 75,000. Petitioner called no witnesses to confirm any of the *111 disbursements of this sum or to explain the differences between his statements to Mr. McKinney and his testimony in this case. While petitioner's statements to Mr. McKinney may have been more reliable than his admission of $ 33,220, we find petitioner's testimony sufficiently reliable to support our finding that he disbursed $ 124,826 of the $ 210,000. He has, however, failed to satisfy his burden of proof as to the balance of the deficiency. Respondent argues, based on our Opinion in , that petitioner should be taxable on the entire $ 210,000 received in 1983 rather than only that portion which petitioner did not distribute to others. In Bender, however, the persons who allegedly received part of the proceeds of the sale of hashish were unidentified by the taxpayer. The taxpayer in that case did not provide "sufficient facts from which to make a determination of the amount paid to others, and we do not accept petitioner's testimony as to the amount retained by him." Bender v. Commissioner, 54 P-H Memo T.C. par. 85,375 at 1658, . To the contrary in this case, petitioner was quite *112 specific in describing the disposition he made of portions of the funds received and much of that testimony was verified by Mr. McKinney's investigation. II. Fraud
Under section 6653(b) respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. ; . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. , affd. without published opinion ; . Fraud is not to be imputed or presumed. ; . However, fraud may be proven by circumstantial evidence because direct proof *113 of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. ; (1969). The intent to conceal or mislead may be inferred from a pattern of conduct. See . A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justified the inference of fraud. See ; However, the mere failure to report income is not sufficient to establish fraud. . Fraud may not be found under "circumstances which at most create only suspicion." ; . Other badges of fraud which may be taken *114 into account include: the making of false and inconsistent statements to revenue agents, ; the filing of false documents, , affd. ; understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets and failure to cooperate with tax authorities. , affg. a Memorandum Opinion of this Court. Petitioner failed to report for tax purposes any of the income which he derived from his drug smuggling activity. He testified that it simply did not occur to him that illegal income was taxable. Although petitioner was young and relatively inexperienced in business matters, he was quite aware of his obligation to file tax returns and carefully reported to his father, who prepared the tax returns, all of petitioner's legal income. We think the more likely reason for the failure to include the illegal income is petitioner's realization that to do so would not only disclose *115 to his father the extent of his illegal activity, but probably alert the Internal Revenue Service and the North Carolina income tax authorities as to the existence of a source of income which probably should be audited. There is no indication that he made any inquiry of his father or of anyone else as to the taxability of this illegal income. We do not believe petitioner's testimony that he did not know of his obligation to report for tax purposes the illegal income. Petitioner knowingly and intentionally failed to report his illegal income intending and hoping to conceal its receipt from respondent. Accordingly, we find that respondent has sustained his burden of proof as to the fraud addition. For the foregoing reasons, we find that petitioner is taxable on $ 5,000 received in 1982 and on the sum of $ 85,174 in 1983. We sustain respondent's determination of the fraud addition for both years in issue. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩